# In the United States Court of Federal Claims

No. 03-2623-C

(Filed: April 20, 2005)

| | |
|---|---|
| SYSTEM FUELS, INC., on its own behalf and as an agent for ENTERGY ARKANSAS, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>            Defendant. | Spent nuclear fuel cases; motion to dismiss; takings; real party in interest; RCFC 17(a); relation back; RCFC 15(c); motion for summary judgment; Nuclear Waste Policy Act of 1982; conditions to contracts; excusing conditions to contracts; *Restatement (Second) Contracts* §§ 224, 269; collateral estoppel; exceptions to the rules of merger and bar; *Restatement (Second) Judgments* § 26 |

Alexander D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, for plaintiff. With him on the briefs were Jay E. Silberg, Devon E. Hewitt, Michael G. Lepre, Daniel S. Herzfeld, and Jack Y. Chu, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy.

## OPINION AND ORDER

LETTOW, Judge.

At issue is a contract for the storage and disposal of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW"). Entergy Arkansas, Inc. ("Entergy Arkansas") is the owner of units 1 and 2 of the Arkansas Nuclear One power plant. Compl. ¶ 2. Through its subsidiary, System Fuels, Inc. ("System Fuels"), Entergy Arkansas entered a Standard Contract under the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. No. 97-425, 96 Stat. 2202 (Jan. 7, 1983) (codified as amended at 42 U.S.C. §§ 10101-10270), obligating the Department of Energy ("DOE") to begin disposing of SNF and HLW generated at Arkansas Nuclear One, commencing

1

no later than January 31, 1998.[1]  DOE has not yet begun to dispose of Arkansas Nuclear One's SNF and HLW, nor does it anticipate beginning any disposal operations until after 2010.

System Fuels filed its complaint on November 5, 2003, alleging that the government partially breached the Standard Contract, violated the implied covenant of good faith and fair dealing, and took its property without compensation.  System Fuels subsequently filed a motion for summary judgment on its claim for partial breach of contract.  The government filed a motion to dismiss the takings count, contending that System Fuels could not bring forward a claim for an uncompensated taking because the property right at stake belongs to Entergy Arkansas and is derived from a contract; it also sought summary judgment on the two contractual counts on the ground that System Fuels's failure to pay the one-time fee owed under the Standard Contract constituted a failure to satisfy a condition precedent.  The government also filed a cross-motion for summary judgment that DOE was not obliged to dispose of System Fuels's waste until 2001 at the earliest.  For the reasons stated below, plaintiff's motion for partial summary judgment is granted, while the government's motion to dismiss and motions for summary judgment are denied.

## BACKGROUND[2]

Prior decisions of the Courts of Appeals for the District of Columbia and Federal Circuits, as well as of the Court of Federal Claims, have described the controversy over the storage and disposal of SNF and HLW.[3]  As a result, only those facts related to the pending motions are recounted below.

### A. The NWPA

On January 7, 1983, the NWPA was enacted, authorizing the Secretary of DOE to "enter into contracts with any person who generates or holds title to high-level radioactive waste, or

---

[1]System Fuels is a service company acting on behalf of, and as agent for, Entergy Arkansas regarding Arkansas Nuclear One.  System Fuels is owned by Entergy Arkansas, Entergy Louisiana, Inc., Entergy Mississippi, Inc. and Entergy New Orleans, Inc.  Entergy Arkansas is a wholly-owned subsidiary of Entergy Corporation.  Corporate Disclosure Stmt. at 1.

[2]The facts recounted below do not constitute findings of fact by the court.  All of the stated facts are either undisputed or alleged and assumed to be true for the purposes of one or more of the pending motions.  When material facts are disputed, such dispute is noted, and a finding is reserved for future proceedings.

[3]*See Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 170 n.3 (2005) (listing earlier decisions rendered regarding the disposal of SNF and HLW); *see also Entergy Nuclear Indian Point 2, LLC v. United States*, __ Fed. Cl. __, 2005 WL 579525, at *1-5 (Mar. 9, 2005); *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336, 338-340 (2005).

spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1). The NWPA conditioned the Nuclear Regulatory Commission's renewal of nuclear facilities' licenses on their entering into, or negotiating in good faith towards, such a contract for the disposal of SNF and HLW. *Id.* § 10222(b)(1)(A). Contracting utilities were required to pay a one-time fee for the electricity generated and sold prior to April 7, 1983, and a continuing fee based on electricity generated after that date. *Id.* § 10222(a)(2)-(3). In exchange, the NWPA mandated that contracts include language requiring DOE to begin to dispose of SNF and HLW no later than January 31, 1998. *Id.* § 10222(a)(5)(B).

## B. The Standard Contract

After notice and a comment period, DOE promulgated a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, codified at 10 C.F.R. § 961.11 ("Standard Contract"). *See* 48 Fed. Reg. 5,458 (Feb. 4, 1983). The Standard Contract allowed utilities to choose from three payment options for the one-time fee; utilities were to make their choice within two years of contract execution. Standard Contract, art. VIII.B.2. The utilities could (1) opt to prorate the fee evenly over forty quarters with interest accruing on the unpaid portions, (2) defer the fee with interest, or (3) pay the fee in full by June 30, 1985 without interest.[4] For the deferral option, the Contract specified that:

---

[4]For the lump-sum option and the prorated option, the Contract provided that:

(a) Option 1 – The [utility's] financial obligation for said fuel shall be prorated evenly over forty (40) quarters and will consist of the fee plus interest on the outstanding fee balance. The interest from April 7, 1983, to date of the first payment is to be calculated based upon the 13-week Treasury bill rate, as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period. Beginning with the first payment, interest is to be calculated on [the utility's] financial obligation plus accrued interest, at the ten-year Treasury note rate in effect on the date of the first payment. In no event shall the end of the forty (40) quarters extend beyond the first scheduled delivery date as reflected in the DOE-approved delivery commitment schedule. All payments shall be made concurrently with the assigned three month period payments. At any time prior to the end of forty (40) quarters, [the utility] may, without penalty, make a full or partial lump sum payment at any of the assigned three month period payment dates. Subsequent quarterly payments will be appropriately reduced to reflect the reduction in the remaining balance in the fee due and payable. The remaining financial obligation, if any, will be subject to interest at the same ten-year Treasury note rate over the remainder of the ten year period.

. . .

(c) Option 3 – The [utility's] financial obligation shall be paid prior to June 30, 1985,

(b) Option 2 – The [utility's] financial obligation shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule, and shall consist of the fee plus interest on the outstanding fee balance. Interest is to be calculated from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate, as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period until payment.

*Id.* As mandated by the NWPA, the Standard Contract required DOE to dispose of SNF and HLW by January 31, 1998. *Id.*, art. II.

The Standard Contract also established a procedure by which DOE would identify and then collect SNF and HLW from the utilities. For planning purposes, DOE was to issue an annual capacity report ("ACR") every year beginning no later than July 1, 1987. *Id.*, art. IV.B.5(b). This report would "set forth the projected annual receiving capacity for the DOE facility(ies) and the annual acceptance ranking relating to DOE contracts for the disposal of SNF and/or HLW including, to the extent available, capacity information for ten (10) years following the projected commencement of operation of the initial DOE facility." *Id.* ACRs dictated the amount of SNF that would be deposited in a given year. Acceptance priority rankings ("APRs") determined which SNF and HLW would be collected for disposal, with the general rule being that the oldest fuel or waste would be disposed first. *Id.*, art. IV.B.5(a).

Utilities could submit delivery commitment schedules ("DCSs") to DOE beginning on January 1, 1992. *Id.*, art. V.B.1. These submissions were to identify "all SNF and/or HLW the [utility] wishes to deliver to DOE beginning sixty-three (63) months thereafter." *Id.*[5] DOE was to approve or disapprove such schedules within three months of receipt. *Id.* In the case of disapproval, DOE was to list the reasons for disapproval and request submission of a revised schedule within thirty days, and upon receipt DOE would approve or disapprove of that schedule within sixty days. *Id.*, arts. V.B.1-2. No less than twelve months prior to the delivery date,

---

or prior to two (2) years after contract execution, whichever comes later, in the form of a single payment and shall consist of all outstanding fees for SNF and in-core fuel burned prior to April 7, 1983. Under this option, no interest shall be due to DOE from April 7, 1983, to the date of full payment on the outstanding fee balance.

*Id.*

[5]System Fuels claims that the DCS process, as administered by DOE, violated the Standard Contract. Special instructions called for DCS submissions to include only the amount of SNF or HLW allotted in DOE's most recent ACR, not as much as the utility wished. Pl.'s Reply in Support of Its Motion for Summary Judgment on Liability and Opposition to Defendant's Cross-Motion for Summary Judgment on Liability ("Pl.'s Reply") at 13.

utilities were to submit final delivery schedules ("FDSs"). *Id.*, art. V.C. Utilities could adjust the quantities of SNF or HLW up to twenty percent in either direction or change the date of delivery up to two months, until the submission of the final delivery schedule. *Id.*, art. V.B.2. In addition, up to six months before the delivery date and with DOE approval, utilities could engage in "SNF put-option trading," meaning they could exchange delivery dates. *Id.*, art. V.E.

During part of the 1990s, DOE issued ACRs and APRs, and accepted and approved DCSs, but DOE subsequently halted the process. On or around March 1997, DOE stopped approving DCS submissions and voided some previously-approved DCSs. Pl.'s App. 104-113 (Voided DCSs); *see Entergy Nuclear Indian Point 2*, __ Fed. Cl. at __ n.5, 2005 WL 579525, at *3 n.5. DOE returned DCS submissions to utilities without approving or disapproving them, and waived the requirement of submitting a revised DCS. *See* Pl.'s App. 114-124 (Letters from Beth A. Tomasoni, Contracting Officer, DOE, to utilities); *id*. at 125-27 (Letters from Arnold A. Gjerstad, Contracting Officer, DOE, to utilities).

Roughly seven years later, in July 2004, DOE resumed the DCS process, calling for submissions based upon an opening in 2010 of a repository at Yucca Mountain, Nevada. Pl.'s App. 132 (Instructions on Completing the 2004 DCSs from DOE to utilities). The Yucca Mountain repository would have more than double the annual capacity of the Monitored Retrievable Storage facility on which the 1990s DCSs were based. Hr'g Tr. at 35; *Compare* Pl.'s App. 144 (DOE APR & ACR (July 2004)) (projecting capacity for 10-year period to be 22,200 Metric Ton Units ("MTU")), *with* Def.'s App. in Support of Its Cross-Motion for Summary Judgment ("Def.'s App. II") at 294 (DOE APR & ACR (March 1995)) (projecting capacity for 10-year period to be 8,200 MTU). Although DOE's guidance was ambiguous, it appeared that new submissions might replace – rather than automatically supplement – the prior submissions. For example, a utility which submitted DCSs nominating 50 MTU of SNF for disposal in 1998 and which submitted a DCS for disposal in 2010 of 60 MTU of SNF would be allotted 60 MTU of SNF for disposal in 2010, not 110 MTU. Hr'g Tr. at 36-37; *see also Entergy Nuclear Generation*, 64 Fed. Cl. at 340 n.4. In December 2004, DOE again halted the DCS process, stating that "resumption of the DCS process was premature" and that the DCS process would again resume "[a]fter the Department has determined a revised date for the initial operation of the Yucca Mountain repository." Pl.'s Supp. Br., Ex. 1 (Letter from David Zabransky, Contracting Officer, DOE, to Frank Rives, Entergy Operations, Inc. (Dec. 1, 2004)).[6]

### C. Arkansas Nuclear One

System Fuels executed its Standard Contract with DOE on June 30, 1983, on behalf of itself and Entergy Arkansas. Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact Accompanying Its Cross-Motion ("PRDFUF") ¶ 28; Def.'s App. in Support

---

[6]The viability of Yucca Mountain as a site for disposition of nuclear waste has been cast into doubt by the decision in *Nuclear Energy Institute v. Environmental Protection Agency*, 373 F.3d 1251 (D.C. Cir. 2004).

of Its Motion to Dismiss and for Summary Judgment ("Def.'s App. I") at 1 (System Fuels's Standard Contract). This contract covered units 1 and 2 at Arkansas Nuclear One power plant. Def.'s App. I at 29 (System Fuels's Standard Contract). Entergy Arkansas (then known as Arkansas Power & Light Company) chose the deferral option for the payment of the one-time fee. *Id*. at 41 (Letter from Tom Cogburn, General Manager, Nuclear Services, Arkansas Power & Light Co. to Christopher T. Jedrey, Contracting Officer, Department of Energy (June 27, 1985)).[7] The principal amount of this fee was $49,149,012.09. Def.'s App. I at 43 (General Accounting Office Report); Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact in Support of Its Motion to Dismiss and Motion for Summary Judgment ("PRDFUF2") ¶ 8. Including DOE's calculation of interest as of December 31, 2003, System Fuels then owed $154,409,163.73 for the one-time fee. Defendant's Proposed Findings of Uncontroverted Fact in Support of Its Motion to Dismiss and Motion for Summary Judgment ("DFUF2") ¶ 8. Since it signed the Standard Contract, System Fuels has paid over $233 million in continuing fees. PRDFUF2 ¶ 7.

On December 28, 1995, System Fuels submitted, and DOE approved, a DCS for the "proposed delivery year" of 2001, which included the caveat that "[t]he proposed delivery date is dependent upon the existence of an operational repository or an interim storage facility constructed under the act." Def.'s App. I at 31 (System Fuels's DCS).

As a result of DOE's breach of its obligations under the Standard Contract, System Fuels alleges it incurred over $44 million in expenses for storage of SNF and HLW. System Fuels avers it spent these costs in designing, licensing, constructing, and operating an Independent Spent Fuel Storage Installation ("ISFSI"), purchasing, constructing, and loading 24 VSC-24 dry spent fuel storage containers, purchasing ancillary equipment, upgrading its fuel building crane, purchasing and storing Holtec HI-STORM dry spent fuel storage containers, and expanding the ISFSI to accommodate more dry-spent-fuel storage containers. Pl.'s Reply at 9-10.

### D. This Lawsuit

System Fuels filed suit on its own behalf and on behalf of Entergy Arkansas claiming partial breach of contract, breach of the implied covenant of good faith and fair dealing, and an uncompensated taking. It has also filed a motion for summary judgment on liability for the partial-breach-of-contract claim. The government responded with a motion for summary

---

[7]The contract signed by System Fuels matches the form Standard Contract regarding the deferred option for the one-time fee. However, regarding the payment of the continuing fee the contract signed by System Fuels differs from the Standard Contract because System Fuels's contract requires that the fee be imposed on electricity that is generated, rather than the electricity that is sold. *Compare* Standard Contract, art. VIII.B.1., *with* Def.'s App. I at 19 (System Fuels's Standard Contract, art. VIII.B.1.). *See Wisconsin Elec. Power Co. v. Department of Energy*, 778 F.2d 1 (D.C. Cir. 1985) (resolving that the continuing fee would be calculated on the basis of electricity sold, not generated).

judgment on the contract and good-faith-and-fair-dealing counts based upon System Fuels's failure to pay the one-time fee and a motion to dismiss the takings claim because Entergy Arkansas's properties are at stake, not System Fuels's, and because the taking is purportedly based on a contractual right.  The government also filed a cross-motion for summary judgment, which claims that no breach occurred prior to 2001, at the earliest, when System Fuels's first-filed DCS proposed disposal.  The court held a hearing on March 1, 2005 to address these motions.

## STANDARD FOR DECISION

A court's task in assessing a motion to dismiss for failure to state a claim upon which relief may be granted "'is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A motion to dismiss under RCFC 12(b)(6) should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A court should grant summary judgment when the pleadings and the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  RCFC 56(c).  In ruling on a motion for summary judgment, a court must resolve all issues in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 587-88 (1986).  If no rational trier of fact could find for the non-moving party, summary judgment is appropriate.  *Id.* at 587.  When considering cross-motions for summary judgment, courts evaluate each motion on its own merits, and denial of both motions is appropriate if genuine disputes over material facts exist.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

## ANALYSIS

A federal court addresses jurisdictional matters before the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998).  The government's challenge to System Fuels's standing to bring a takings claim will be considered first.  The court will then address the government's motion to dismiss the takings claim for failure to state a claim upon which relief may be granted, followed by the government's motion for summary judgment for failure to satisfy a condition precedent and the parties' motions for summary judgment on the partial-breach-of-contract claim.

This court has subject matter jurisdiction over System Fuels's claims under the Tucker Act, 28 U.S.C. § 1491.  *See Boston Edison Co.*, 64 Fed. Cl. at 174-179.  *Contra Florida Power & Light Co. v. United States*, 64 Fed. Cl. 37 (2005).

*REAL PARTY IN INTEREST*

The government claims that System Fuels does not have standing to sue for an uncompensated taking of Entergy Arkansas's vested property rights. *See* Defendant's Motion for Summary Judgment upon Counts I and II of Plaintiff's Complaint and, in the Alternative, upon Defendant's Right to Recover Unpaid Fees, and Defendant's Motion to Dismiss Count III of Plaintiff's Complaint ("Def.'s Mot.") at 23. To satisfy the constitutional minimum for standing, a plaintiff must have suffered an injury-in-fact that is concrete and particularized, fairly traceable to the actions of the defendant, and redressable if the suit succeeds on the merits. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The government argues that because the property allegedly taken belonged to Entergy Arkansas and not System Fuels, the latter has not suffered sufficient injury-in-fact to meet the standing requirement for the takings claim.

System Fuels contends that the question is not one of standing but whether it is a real party in interest under Rule 17(a) of the Rules of the Court of Federal Claims ("RCFC"). *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment upon Counts I and II of Plaintiff's Complaint and Opposition to Defendant's Motion to Dismiss Count III of Plaintiff's Complaint ("Pl.'s Opp'n") at 8. RCFC 17(a) provides that –

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

System Fuels claims that it is the real party in interest, and even if it is not, that it should be given a reasonable period of time to amend its complaint to join Entergy Arkansas pursuant to RCFC 17(a). Pl.'s Opp'n at 9-10.

Notwithstanding System Fuels's contentions, Entergy Arkansas is the real party in interest regarding the takings claim. For a party to allege that its property right has been taken, it must have owned the property at the time that the alleged taking occurred. *Cavin v. United States*, 956 F.2d 1131, 1135 (Fed. Cir. 1992); *Smith v. United States*, 28 Fed. Cl. 430, 436 (1993); *Illinois v. United States*, 15 Cl. Ct. 399, 410 (1988). The complaint explicitly states that the vested property rights have always belonged to Entergy Arkansas. Compl. ¶ 33. It adds that "the Government's failure to honor its commitments under the Standard Contract will prevent *Entergy Arkansas* from being able to decommission its nuclear plant site and devote that site to commercial uses as soon as it otherwise would have been able to do so." *Id.* (emphasis added).

Because the real party in interest is not presently before the court, the question is whether System Fuels should be given an opportunity to amend its complaint to join Entergy Arkansas as a plaintiff. The government objects to the applicability of RCFC 17(a) because System Fuels should have had no difficulty in determining that Entergy Arkansas was the real party in interest and Entergy Arkansas accordingly should have been named as a plaintiff at the outset of the action.

Interpreted literally, RCFC 17(a) is applicable to every case where a plaintiff has been named inappropriately. Historically, however, "when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then the last sentence of Rule 17(a) was not applicable and the action should be dismissed." 6A Charlie Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1555, at 415 (2d ed. 1990) (interpreting Rule 17(a) of the Federal Rules of Civil Procedure).[8]

In this case, System Fuels's actions in framing the complaint were understandable. System Fuels asserts both a taking of physical property rights and of rights derived from a contract to which it was a signatory. Compl. ¶ 33; Pl.'s Opp'n at 11-13. The Federal Circuit's gloss on the Rule is instructive. RCFC 17(a) is guided by a "general principle that actions should be brought in the name of the real party in interest and that courts should be lenient in permitting ratification, joinder, or substitution of that party." *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999). As with Fed. R. Civ. P. 17(a), the purpose of RCFC 17(a) is to "enable a defendant to present defenses he has against the real party in interest, to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have proper res judicata effect." *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973); *see also United Fed'n of Postal Clerks, AFL-CIO v. Watson*, 409 F.2d 462, 470-71 (D.C. Cir. 1969), 4 Daniel R. Coquillette et al., *Moore's Federal Practice* § 17.10[2] (3d ed. 2004) (The Rule "is intended to protect defendants from multiple liability in actions by subsequent claimants and also to ensure that the judgment in the action will have res judicata effect."). Joining Entergy Arkansas in this case would effectuate these purposes.

Counsel for the government stated at the hearing on the cross-motions that the only prejudice the government would suffer would be through circumvention of the statute of limitations. Hr'g Tr. at 52. However, the statute of limitations does not pose an obstacle to Entergy Arkansas's inclusion in the complaint. System Fuels and Entergy Arkansas invoke the relation-back doctrine set out in RCFC 15(c). "'[I]nquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.'" *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1369 (Fed. Cir. 2004) (applying the relation-back principles set out in RCFC 15(c) and quoting *Snoqualmie Tribe v. United States*, 372 F.2d 951, 960 (Ct. Cl. 1967)). Amendments to pleadings may relate back to

---

[8]RCFC 17(a) is written to conform with Fed. R. Civ. Proc. 17(a). *See* RCFC 17 rules committee note.

include new parties when the claims of both parties are "sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim." *Id.* (quoting *Snoqualmie Tribe*, 372 F.2d at 961). In this case, the complaint identifies that System Fuels filed suit both on its own behalf and on behalf of Entergy Arkansas, and the takings claim arose out of the same set of transactions and occurrences that led to the contract claim and good-faith-and-fair-dealing claim. Given these circumstances, the government had sufficient notice that it faced a broader claim, and it would not be prejudiced by relation back. Accordingly, amending System Fuels's complaint to join Entergy Arkansas would comport with RCFC 15(c) and thus would not run afoul of the statute of limitations.

In applying RCFC 17(a), this court has been guided by the text of the Rule and the Federal Circuit's decision in *First Hartford*. In contrast, other courts have suggested that the Rule gives rise to a three-part test for joining real parties in interest, drawing upon the decision in *Scheufler v. United States*, 126 F.3d 1261, 1270 (10th Cir. 1997). This proffered test would require the court to consider whether the defendant will be prejudiced, whether the factual allegations of the complaint will change, and whether the defendant has been aware of the relevant parties. *See Holland v. United States*, 62 Fed. Cl. 395, 401-02 (2004); *Deponte Invs., Inc. v. United States*, 60 Fed. Cl. 9, 10 (2004); *First Annapolis Bancorp, Inc. v. United States*, 54 Fed. Cl. 529, 542 (2002). This court is dubious that *Scheufler* engenders such a test for joinder under Rule 17(a). Instead, the Tenth Circuit in *Scheufler* was merely addressing the defendant's argument that joinder would unfairly prejudice it and that the newly joined plaintiffs "were new parties with new causes of action." *Scheufler*, 126 F.3d at 1269. In all events, those considerations correlate with the relation-back principles addressed through RCFC 15(c) and *Barron Bancshares*, quoted *supra*. The real-party-in-interest precepts set out in RCFC 17(a) can be applied in conjunction with the relation-back principles of RCFC 15(c), but the concepts have been and should remain separate and distinct from each other. *See*, *e.g.*, 3 *Moore's Federal Practice* § 15.19[2] ("[C]ourts generally allow the relation back of amendments that cure jurisdictional or venue defects.").

The propriety of joinder of a real party in interest under Rule 17(a) does not answer all questions about whether the court has jurisdiction over a party, and therefore, the government's standing objection still must be resolved. *See First Hartford*, 194 F.3d at 1289. *See also* 4 *Moore's Federal Practice* § 17.13[1] ("Rule 17 does not affect jurisdiction. The Rule relates only to the determination of proper parties and the capacity to sue."). Entergy Arkansas has allegedly suffered injury from the government's failure to collect the SNF it was contractually obligated to dispose, while System Fuels, as an entity in privity of contract with the government, has suffered injury-in-fact by the government's alleged partial breach. Both of these entities have standing to bring their respective claims. Permissive joinder is appropriate when the claims arise out of the same transaction or occurrence and common questions of law or fact will arise in the action. RCFC 20(a); *Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336-37 (2004). Because the claims arise out of the same transaction or occurrence and share common issues of fact, as reflected in RCFC 17(a), joining Entergy Arkansas's takings claim and System Fuels's claims is appropriate. The prudential consideration of protecting against double recovery also

10

supports joinder.  In this vein, consolidation would likely be appropriate if separate claims were filed.  *See Entergy Nuclear Indian Point 2, LLC v. United* States, 62 Fed. Cl. 798, 802-803 (2004).

Accordingly, System Fuels is granted leave to file an amended complaint on or before May 16, 2005, listing Entergy Arkansas as a plaintiff.  If Entergy Arkansas fails to agree to bring its claim or System Fuels fails to file an amended complaint, the takings claim shall be dismissed.

*TAKINGS CLAIM*

The government also moves to dismiss the takings claim under RCFC 12(b)(6) because the property right alleged derives from a contract.  According to the government, a plaintiff cannot recover damages under a takings claim when the right taken was created solely by a voluntarily-entered contract and the plaintiff could recover its damages under a breach-of-contract claim.  Def.'s Mot. at 27-28 (citing *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002); *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct. Cl. 1978)).

System Fuels puts forward two distinct takings claims.  The first is that the government took the contractual right to disposal under the Standard Contract, and the second is that the government, through a categorical or regulatory taking, forced Entergy Arkansas to use its premises to store SNF for which the government is responsible.  Compl. ¶ 33; Pl.'s Opp'n at 11-13.  Both of these theories state a claim upon which relief may be granted, assuming that Entergy Arkansas proves the circumstances currently alleged.  *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 336-37, 342 (2002); *Cienega Gardens v. United States*, 331 F.3d 1319, 1345, 1354-55 (Fed. Cir. 2003); *Chancellor Manor v. United States*, 331 F.3d 891, 904-06 (Fed. Cir. 2003).  Given that the standard for determining whether a regulatory taking has occurred is both fact-intensive and case-specific, developing a more comprehensive record is appropriate.  *See Tahoe-Sierra Preservation Council*, 535 U.S. at 336-37, 342.

The court rejected a similar argument by the government in *Boston Edison*.  On a motion by the government for summary judgment respecting a similar takings theory, the court held that Boston Edison could bring contract and takings claims concurrently, but if both claims remained viable, recovery of damages under the contract would take precedence.  *See Boston Edison*, 64 Fed. Cl. at 187-88.  *See also Cienega Gardens*, 331 F.3d at 1334 ("the abrogation by legislation of clear, unqualified contract rights requires a remedy, even in a highly regulated industry, [such as banking], because the contracts embodied the commitments of the contracting parties"); *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986) (suggesting a takings claim as an alternative to a suit for damages for the government's failure to vacate at the end of a lease); *Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 42 Fed. Cl. 30, 34-35 (1998) ("defendant's motion does not preclude plaintiff from pleading a takings claim and breach of contract claim in the alternative").  The court also pointed to prior decisions

that have denied motions to dismiss in this context pending development of a more complete record.  *See Detroit Edison Co. v. United States*, 56 Fed. Cl. 299, 302-03 (2003); *Yankee Atomic Elec. Co. v. United States*, 42 Fed. Cl. 223, 236 (1998).

It is appropriate to proceed with both claims until the contract claim reaches fruition. Only after the contract claim has been fully litigated will it be possible to determine if the contract claim is viable.  Some decisions of the court have dismissed takings claims once the government has been held liable for breach of contract prior to addressing damages under a contractual theory, while others preserve both claims until final judgment is rendered.  *Compare Allegre Villa v. United States*, 60 Fed. Cl. 11, 19 (2004) (dismissing takings claims in the housing context on the grounds that plaintiffs were in privity of contract, in contrast to *Cienega Gardens* where they were not, so contract claims were viable); and *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 656 n.8 (2003) (dismissing a takings claim in a SNF-related case after granting summary judgment on a partial-breach-of-contract claim), *with Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 501 (2005) (holding that the plaintiff had standing to pursue its takings claim while granting plaintiff's motion for partial summary judgment that the government was liable for partial breach of contract).  Each of these decisions embraces the underlying principle that contract and takings claims may be pled and argued in the alternative, and that a viable breach-of-contract claim trumps a valid takings claim.  Viewed at the end of the proceedings in a case, these decisions may have produced the same results, but this court nonetheless holds that maintaining both claims is a more appropriate course prior to the time judgment is rendered on the contract claims.

*ONE-TIME FEE*

The government has moved for summary judgment on System Fuels's partial-breach-of-contract claim and its good-faith-and-fair-dealing claim on the ground that System Fuels has failed to pay its one-time fee, which the government argues is a condition precedent to DOE's obligation.  Def.'s Mot. at 5-18.[9]  A condition "is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Restatement (Second) of Contracts* § 224 (1981) (hereinafter "*Restatement (Second) Contracts*").[10]  "Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."  *Id.* § 225.  The government argues that its disposal responsibilities were conditioned on payment of both the one-time fee and the continuing fees, and that System Fuels failed to satisfy this condition.  As the government would

---

[9]The government also moves for leave to amend its answer to assert an affirmative counterclaim and a counterclaim for recoupment of offset.  For good cause shown, that motion is granted.

[10]The *Restatement (Second) of Contracts* avoids the traditional terms of "condition precedent" and "condition subsequent" and instead uses the terms "condition" and "discharge." *Restatement (Second) Contracts* § 224 cmt. e.

have it, until System Fuels satisfies this condition or it is excused, the government is not obligated to dispose of any SNF. In addition, according to this argument, because System Fuels is suing for partial breach of contract instead of a total breach, System Fuels must continue to meet its obligations. The government points out that DOE was first scheduled to dispose of System Fuels's SNF in 2001, but System Fuels had not then, and still has not, paid its one-time fee, and therefore, the government avers it had and has no obligation to dispose of System Fuels's SNF.

First, payment of the one-time fee is a condition of DOE's disposal of a utility's SNF. The language of the Standard Contract is not ambiguous: the one-time fee "shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." Standard Contract, art. VIII.B.2(b). Use of the term "shall" connotes a mandatory obligation, *see Southern California Edison v. United States*, 58 Fed. Cl. 313, 321 (2003), and the mandatory obligation is that the fee be paid "anytime prior to the first delivery." Thus, the timing of the payment of the fee and delivery are contractually linked, and payment of the one-time fee is a condition of DOE's disposal obligations.

Nonetheless, the condition was excused in this case based upon temporary frustration of purposes caused by the government's suspension of the DCS process. *Restatement (Second) Contracts* § 269 provides that

> [i]mpracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

The deferral option for payment of the one-time fee incorporates the DCS process into the timing of the payment, by connecting the timing of the payment to "the DOE approved delivery commitment schedule." Standard Contract, art. VIII.B.2(b). The government has suspended the DCS process on which the deadline for payment hinges. In fact, it is presently impossible for a utility to acquire a "DOE approved delivery commitment schedule" because DOE has ceased to approve any and all DCSs. Pl.'s App. 4 (Dep. of David Zabransky, Contracting Officer, DOE (Apr. 18, 2002)) (admitting that "[b]ecause of the suspension of the DCS process it's impossible for a utility to have a DCS approved"). The principal purpose of System Fuels's selection of the deferral option was to delay payment until the point when delivery of SNF was imminent. This claim is buttressed by System Fuels's stated willingness to pay the one-time fee once the date for delivery of its SNF was assured. *See* Pl.'s Opp'n at 6. This representation is credible, considering that System Fuels has paid over $220 million in continuing fees and has made regular payment of those fees even after filing this suit. *Id.* at 7. In the circumstances, the government's delay in disposing of SNF and HLW has temporarily frustrated the purpose behind System Fuels's selection of the deferral option. As a result, the condition has been temporarily

excused pending the beginning of the disposal process, and System Fuels may proceed with its claim of a partial breach of contract notwithstanding its deferral of the one-time fee.[11]

Second, the government seeks, in the alternative, a partial summary judgment that the one-time fee is presently owed. Because System Fuels is suing for a partial breach of contract, its contractual duties have not been discharged. *See Restatement (Second) Contracts* § 243 cmt. a ("If, in spite of the breach, he wishes to await performance by the party in breach and to have merely a claim for damages for partial breach . . . [h]is remaining duties are then not discharged"). System Fuels has continued satisfying its contractual obligations by paying the continuing fee, but it is not obligated to pay the one-time fee until immediately prior to the first delivery. Even though its first delivery was originally scheduled for 2001, the government suspended the DCS process before System Fuels could submit an FDS. *See supra*, at 5-6. Delivery will not begin, if at all, until some time after 2010, and the fee may be paid "anytime prior to the first delivery." Standard Contract, art. VIII.B.2(b). In addition, System Fuels's DCS for delivery of SNF in 2001 included an asterisk next to the delivery date, conditioning the proposed delivery date "upon the existence of an operational repository or an interim storage facility constructed under the act." Def.'s App. I at 31 (System Fuels's DCS for 2001). This language further reflects an objectively reasonable understanding about the lack of an assured time for delivery of the SNF and correlatively for paying the one-time fee. The one-time fee is not presently due and the government's request for a partial summary judgment that it is now due is accordingly denied.[12]

*SUMMARY JUDGMENT ON PARTIAL BREACH OF CONTRACT*

Plaintiff seeks summary judgment on liability for the government's partial breach of contract. The government responds by arguing that the plaintiff has not shown any evidence of injury, that the Standard Contract is an alternative contract, and that it is entitled to summary judgment that it is not liable to System Fuels for damages incurred prior to System Fuels's first

---

[11]A condition also may be excused "by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing." *Restatement (Second) Contracts* § 225 cmt. b. System Fuels has alleged such a breach, and that claim will be addressed in future proceedings in this case. Thus, depending on the outcome of those future proceedings, a government breach of the implied covenant of good faith and fair dealing could produce an alternative ground for temporarily excusing the condition.

[12]The government also seeks recoupment or an offset of these fees against any award in the plaintiff's favor. Def.'s Mot. at 1. These issues are best addressed in the damages phase of this case because they relate to a calculation of the parties' expectation interests. Thus, the court will address the government's recoupment or offset claims at a later time.

scheduled delivery in 2001.[13]  Before discussing these arguments, the court must address the
threshold issue of whether the parties are bound by a prior decision.

   A prior decision of the Court of Appeals for the District of Columbia in *Northern States
Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) ("*Northern
States I*"), is relevant to System Fuels's reliance on the doctrine of collateral estoppel.  As this
court has recently stated, mutuality is required for collateral estoppel to operate against the
government.  *See Boston Edison*, 64 Fed. Cl. at 185.   *Compare United States v. Mendoza*, 464
U.S. 154, 162-63 (1984) (rejecting application of non-mutual offensive collateral estoppel
against the government), *with United States v. Stauffer Chem. Co.*, 464 U.S. 165, 173 (1984)
(affirming the use of mutual defensive collateral estoppel against the government).[14]  Plaintiff
was a petitioner before the D.C. Circuit in *Northern States*.  *See* Pl.'s Reply at 8.  The
government has not contested this fact, and therefore the mutuality requirement has been
satisfied.

   Once mutuality has been shown, collateral estoppel applies if  "(1) the issues decided in
the [prior case] are identical to those before us; (2) those issues were actually litigated in the prior
proceeding; (3) the [prior court's] resolution of those issues was necessary to its resulting
judgment; and (4) [the losing party] was afforded a full and fair opportunity to litigate its
position."  *Ammex, Inc. v. United States*, 384 F.3d 1368, 1371 (Fed. Cir. 2004).  These factors
support a finding of collateral estoppel in this case.

   In *Northern States I*, the D.C. Circuit held that a writ of mandamus requiring DOE to
begin disposing of SNF by January 31, 1998 was not appropriate because petitioners had another
potentially adequate remedy, namely, an action for breach of contract.  128 F.3d at 759.  The
court, however, granted a more limited writ of mandamus precluding DOE from excusing its
own delay for failure to construct a permanent repository or interim storage facility.  *Id.* at 760.
In making this finding, the court ordered DOE "to proceed with contractual remedies in a manner

-----

[13]The government has also requested further discovery prior to the court's finding of
summary judgment pursuant to RCFC 56(f), in part to determine whether System Fuels
"understood at any time prior to this litigation that it was entitled to acceptance of its own SNF in
1998 or in an acceptance queue developed outside of the 'oldest fuel first' requirement of the
Standard Contract."  Defendant's Response to Plaintiff's Motion for Summary Judgment on
Liability, and Defendant's Cross-Motion for Summary Judgment on Liability ("Def.'s Cross-
Mot.") at 24.

[14]As applied to this case, the pivotal difference between *Mendoza* and *Stauffer* is
mutuality, not whether the doctrine is being used offensively or defensively.  *See Stauffer*, 464
U.S. at 173 (holding that the argument that applying collateral estoppel against the government
will freeze the development of the law "is persuasive only to prevent the application of collateral
estoppel against the government in the absence of mutuality"); *Boston Edison*, 64 Fed. Cl. at 185
n.19.

consistent with NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998." *Id.* The opinion was specific in its directive to the government – either begin disposing of SNF and HLW by January 31, 1998 or face liability to plaintiffs for contractual remedies.[15]  It is undisputed that the government failed to meet the January 1998 deadline, so in effect, it chose the latter option.

Nonetheless, the government is collaterally estopped only to the extent that the test for application of collateral estoppel is satisfied. *See Ammex*, 384 F.3d at 1371. System Fuels's motion for summary judgment on liability for partial breach of contract is broader than the issue preclusion supplied by *Northern States I*. First, the government could have begun disposal of SNF after *Northern States I* was decided and before January 31, 1998, and may have averted a breach. The government did not do so. Second, the court of appeals held that breach-of-contract claims would be *potentially* adequate and did not address damages. As the government correctly notes, liability for a partial-breach-of-contract claim requires both a showing of partial breach and of resultant injury. *Puritan Assocs. v. United States*, 215 Ct. Cl. 976, 978 (1977); *Cosmo Constr. Co. v. United States*, 196 Ct. Cl. 463, 451 F.2d 602, 605-06 (Ct. Cl. 1971); *Entergy Nuclear Generation*, 64 Fed. Cl. at 344. The government argues that System Fuels has failed to show resultant injury, and that, as a result, System Fuels's motion for summary judgment on liability should be denied. Def.'s Cross-Mot. at 13. However, System Fuels has averred that it has suffered over $44 million in damages incurred to mitigate its losses, which is manifestly sufficient to meet the resultant injury requirement. Pl.'s Reply at 9-10. *Cf. Home Sav. of Am. v. United States*, 399 F.3d 1341, 1352-53 (Fed. Cir. 2005) (affirming trial court's finding that thrift's replacement of supervisory goodwill lost as a result of breach with equity capital was reasonable mitigation). The court is satisfied that System Fuels has suffered sufficient injury to support a summary judgment on liability.

An additional issue is when the partial breach took place. *Northern States I* held that the government had an unconditional obligation to dispose of SNF by January 31, 1998. 128 F.3d at 760. The government argues that it was not obligated to dispose of System Fuels's SNF by January 31, 1998, but only to begin taking some utilities' SNF, and that Arkansas Nuclear One was not at the front of the queue. System Fuels was a petitioner in *Northern States I*, and the court did not make such a distinction.[16]  Nonetheless, the court of appeals did not address

_____

[15]The Federal Circuit has adopted the reasoning of the D.C. Circuit on this point. *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000); *Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000) ("*Northern States II*").

[16]In its briefing, the government emphasizes that the litigants in *Maine Yankee* all had DCSs for 1998, and argues that it did not waive its arguments relating to utilities with later DCSs. Def.'s Cross-Mot. at 11-12. This argument is beside the point because the government failed to raise this contention both in the case where plaintiff was a petitioner and in the follow-up to that case before the Federal Circuit. *See Northern States II*, 224 F.3d at 1361; *Northern*

whether the partial breach in this case took place *prior* to January 31, 1998, *e.g.*, when DOE suspended the DCS process, and that issue will be addressed in future proceedings in this case.

The government has also filed a cross-motion for summary judgment on liability, arguing that the earliest possible date it should be held liable to System Fuels was in 2001, the first year for which System Fuels had a DCS. *See* Def.'s Cross-Mot. at 14. Because *Northern States I* set January 31, 1998 as the last date a breach could have taken place, the government's cross-motion is denied. Furthermore, the government argues that the Standard Contract should be treated as an alternative contract. Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment on Liability at 10. As this court has stated elsewhere, the government misconceives of its discretion under the Standard Contract and fails to show that the Standard Contract constitutes an alternative contract. *See Entergy Nuclear Indian Point 2*, __ Fed. Cl. at __, 2005 WL 579525, at *8; *Entergy Nuclear Generation*, 64 Fed. Cl. at 344-45.

In short, the government is collaterally estopped from arguing that the partial breach took place after January 31, 1998. The plaintiff is not, however, estopped from seeking damages incurred prior to January 31, 1998 where it was acting to mitigate its losses after DOE suspended the DCS process and it had become evident that the January 31, 1998 deadline would not be met. *See Entergy Nuclear Indian Point 2*, __ Fed. Cl. at __, 2005 WL 579525, at *7; *Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 674 (2004). Accordingly, the plaintiff's motion for partial summary judgment is granted, and the government's cross-motion for summary judgment on the breach-of-contract claim is denied.

### SYSTEM FUELS'S DAMAGES

Given the court's holding that DOE partially breached System Fuels's Standard Contract and the likelihood that DOE will not begin its disposal obligations until well after 2010, if at all, the court should address what damage claims it will consider at trial. After the trial, the court will award a final judgment. As a general rule, "[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (*see* [*Restatement (Second) Judgments*] §§ 18, 19 [1982]), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) Judgments* § 24(1). *See also Young Eng'rs, Inc. v. International Trade Comm'n*, 721 F.2d 1305, 1314-15 (Fed. Cir. 1983); *Entergy Nuclear Indian Point 2*, __ Fed. Cl. at __, 2005 WL 579525, at *9; *Tennessee Valley Auth.*, 60 Fed. Cl. at 676-78. Several exceptions to this general rule exist, and cases for partial breach of the Standard Contract are particularly appropriate for waiver of the merger and bar requirements. *Restatement (Second) Judgments* § 26(1) provides that

the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff

---

*States I*, 128 F.3d at 754.

against the defendant [when] . . . (b) The court in the first action has expressly
reserved the plaintiff's right to maintain the second action; or . . . (e) For reasons
of substantive policy in a case involving a continuing or recurrent wrong, the
plaintiff is given an option to sue once for the total harm, both past and prospective,
or to sue from time to time for the damages incurred to the date of suit, and
chooses the latter course.

The court hereby adopts the exceptions to the rule of merger and bar in accordance with
*Restatement (Second) Judgments* § 26(1)(b) and (e). At trial, the scope of System Fuels's
damages shall be limited to those damages incurred between the alleged date of the breach and
the close of System Fuels's most recent fiscal year prior to the start of the trial. System Fuels
may bring additional, subsequent claims for damages incurred during later fiscal years, provided
such claims comply with the court's statute of limitations. *See Entergy Nuclear Indian Point 2*,
__ Fed. Cl. __, 2005 WL 579525, at *9; *Entergy Nuclear Generation*, 64 Fed. Cl. at 345-46;
*Tennessee Valley Auth.*, 60 Fed. Cl. at 677-78.[17]

## CONCLUSION

For the reasons set out above, the plaintiff's motion for summary judgment is
GRANTED, as is the government's motion to amend its answer. In this connection, the court
DENIES the government's request for further discovery prior to ruling on plaintiff's motion for
summary judgment. The government's motion to dismiss the takings claim (Count III) is
DENIED. The government's cross-motion for summary judgment on liability and its motion for
summary judgment on the partial breach-of-contract and good-faith-and-fair-dealing claims are
also DENIED. The court reserves decision on the issue of whether the government is entitled to
recoupment or offset of the one-time fee.

On or before May 16, 2005, System Fuels shall file an amended complaint joining
Entergy Arkansas as a plaintiff. If Entergy Arkansas fails to agree to bring its claim or if System
Fuels otherwise does not file such an amended complaint, System Fuels's takings claim shall be
dismissed.

Trial on the measure of damages and on the issue of whether a breach took place prior to
January 31, 1998 is necessary. The scope of System Fuels's claim for redress shall be limited to

---

[17]As in this court's prior decisions in SNF-related cases, this court's six-year statute of
limitations, *see* 28 U.S.C. § 2501, does not foreclose reliance on the exceptions to merger and bar
set out in *Restatement (Second) Judgments* § 26(1)(b) and (e). The statute of limitations does not
begin to run until the claimant has suffered damages, although such damages need not be
calculable with precision. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir.
1988) (quoting *Terteling v. United States*, 167 Ct. Cl. 331, 339, 334 F.2d 250 (1964)). In other
words, to be timely, System Fuels must file claims for damages post-dating its claims in this case
within six years of their first incurrence by System Fuels.

those damages incurred between the initial date of the government's breach and the close of System Fuels's most recently concluded fiscal year prior to trial.  System Fuels shall retain the right to bring subsequent claims for damages incurred after its most recent fiscal year prior to trial, in accordance with *Restatement (Second) Judgments* § 26(1)(b) and (e).  The parties shall submit a joint status report on or before June 6, 2005, setting forth a plan for completion of discovery and a proposed schedule for further proceedings in this case, addressing the requirements of RCFC Appendix A ¶¶ 5 and 12 (final sentence).

It is so ORDERED.


s/ Charles F. Lettow
Charles F. Lettow
Judge