# In the United States Court of Federal Claims

No. 03-2623C

(Filed: September 29, 2006)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * *<br>**SYSTEM FUELS, INC. and**<br>**ENTERGY ARKANSAS, INC.,**<br>                    Plaintiffs,<br>        v.<br>**UNITED STATES,**<br>                    Defendant.<br>* * * * * * * * * * * * * * * * * * * * * * * * | Suit for partial breach of Standard Contract for disposal of spent nuclear fuel; supplementation of complaint; exceptions to the merger and bar preclusion precepts as set out in *Restatement (Second) of Judgments* § 26; RCFC 15(d); deposition of corporate designee; RCFC 30(b)(6); alleged defense of setoff respecting deferral of one-time fee; additional depositions beyond presumptive number; RCFC 30(a)(2)(A) |

        Alexander D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, McLean, Virginia, for plaintiffs. With him on the briefs were Jay E. Silberg, Daniel S. Herzfeld, and Jack Y. Chu, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., and L. Jager Smith, Jr., Wise Carter Child & Caraway, P.A., Jackson, Mississippi.

        Joshua E. Gardner, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy.

**OPINION AND ORDER**

LETTOW, Judge.

        This controversy involves a contract under which the United States Department of Energy ("DOE" or "the government") undertook to collect and dispose of spent nuclear fuel and high-level radioactive waste that had been and would be generated in the course of production of electricity via nuclear means by System Fuels, Inc. and Entergy Arkansas, Inc., (collectively "System Fuels"). The case is similar to other so-called "spent nuclear fuel" cases, including

1

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), and *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006). This court previously granted System Fuels a summary judgment on liability for a partial breach of contract. *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 177 (2005).

Trial on damages in this case has been scheduled to commence on February 12, 2007, roughly four and one-half months from now. In preparing for trial, the parties have filed two sets of motions that bear on the scope and measure of damages at issue. By the first motion, plaintiffs seek to amend and supplement their complaint to address actual damages incurred by them through June 30, 2006. A second set of motions concerns proposed discovery by the government aimed at developing support for a setoff premised on plaintiffs' deferral of a one-time fee payable to the government under the contract at issue. A hearing was held on the motions on September 13, 2006, and the last brief of the parties was filed September 26, 2006. The motions are being resolved expeditiously by the court in this opinion, such that the trial may proceed on schedule.

**BACKGROUND**

"Seeking to avoid the inefficient and potentially unsafe prospect of allowing individual utilities to recycle or dispose of their own [nuclear waste], Congress enacted the [Nuclear Waste Policy Act of 1982] to 'establish the Federal responsibility, and a definite Federal policy, for the disposal of' spent nuclear fuel." *Indiana Mich.*, 422 F.3d at 1372 (quoting *Roedler v. Department of Energy*, 255 F.3d 1347, 1350 (Fed. Cir. 2001) (quoting 42 U.S.C. § 10131(b)(2) (2000))). The Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. No. 97-425, 96 Stat. 2201 (Jan. 7, 1983) (codified as amended at 42 U.S.C. §§ 10101-10270) establishes a regime by which nuclear power generators contract with the Department of Energy for the government to accept, transport, and dispose of spent nuclear fuel and high-level radioactive waste. *System Fuels*, 65 Fed. Cl. at 165 (citing 42 U.S.C. § 10222(a)(1)).[1] For this service, the NWPA provides that the contracts were to require the contracting utilities to pay a one-time fee for the electricity generated and sold prior to April 7, 1983, and a continuing fee based on electricity generated after that date. *Id.* (citing 42 U.S.C. § 42 U.S.C. 10222(a)(2)-(3)). The contracts were also to oblige the government to begin to dispose of spent nuclear waste no later than January 31, 1998. *Id.* (citing 42 U.S.C. § 10222(a)(5)(B)).[2] The operators of nuclear power facilities necessarily

---

[1] "A nuclear reactor must be periodically refueled and the 'spent fuel' removed. This spent fuel is intensely radioactive and must be carefully stored . . . . [T]he wastes will remain radioactive for thousands of years." *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 195-196 (1983).

[2] The government has not yet collected any spent nuclear fuel for disposal. Moreover, the viability of the government's plan to use Yucca Mountain as its nuclear waste repository has been cast into doubt by the decision in *Nuclear Energy Inst. v. Environmental Protection Agency*, 373 F.3d 1251 (D.C. Cir. 2004). The government has announced that it is likely that it will not begin acceptance of the nuclear waste until 2017. Pls.' Proffered Second Am. and Supp. Compl.

had to enter into these contracts; otherwise they would lose their nuclear facility licenses. *Id*. (citing 42 U.S.C. § 10222(b)(1)(A)).

To implement the NWPA, the government promulgated a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, codified at 10 C.F.R. § 961.11 ("Standard Contract"). *See* 48 Fed. Reg. 5,458 (Feb. 4, 1983). Among other things, the Standard Contract set forth three payment options available to utilities for the one-time fee and called upon the contracting utility to choose among the options within two years of contract execution. *System Fuels*, 65 Fed. Cl. at 166. Those options were payment in full by June 30, 1985 without interest, payment deferred over a period of 40 quarters with interest accruing on the unpaid portion, or payment prior to the first delivery of spent nuclear fuel with accrual of interest. Standard Contract, art. VIII.B.2. The Contract specified that the interest attendant to the latter two options was payable at "13-week Treasury bill rates." *Id*. art. VIII.B.2.(a), (b).

On June 30, 1983, plaintiffs entered into a Standard Contract with DOE covering the spent nuclear fuel and high-level radioactive waste generated by the plaintiffs' Arkansas Nuclear One power plant. *System Fuels*, 65 Fed. Cl. at 167. Plaintiffs chose the payment option under the Standard Contract that permitted them to defer payment of the one-time fee until "anytime prior to the first delivery" of nuclear waste. *Id*. at 167-68; Standard Contract, art. VIII.B.2.(b). Plaintiffs obligated themselves under this payment option to pay the one-time fee plus "[i]nterest calculated from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period until payment." *Id*. at 166 (quoting Standard Contract, art. VIII.B.2.(b)).

In December 1995, the plaintiffs submitted, and the government approved, a delivery commitment schedule that set 2001 as the first proposed delivery year for plaintiffs' spent nuclear fuel. *System Fuels*, 65 Fed. Cl. at 168. Other deliveries were proposed for subsequent years. As with the other utilities party to a Standard Contract, the government has not collected any of the plaintiffs' spent nuclear fuel for disposal. Plaintiffs allege that, as a result, they have been forced to mitigate damages by installing and operating on-site dry storage facilities for spent nuclear fuel. Pls.' First Am. Comp. ¶ 21; Pls.' Proffered Second Am. and Supp. Compl. ¶¶ 21, 37. The court's prior grant of summary judgment in favor of plaintiffs on liability was premised on the lack of any genuine dispute of material fact respecting the government's breach and

---

¶ 19; Hr'g Tr. 15:8-10, 54:1, 18-19 (Sept. 13, 2006).

plaintiffs' resulting damage. *System Fuels*, 65 Fed. Cl. at 175-76.[3] Determination of the quantum of plaintiffs' allowable damages was remitted to trial.

In addition, the government had argued that its disposal responsibilities were conditioned on payment of both the one-time fee and the continuing fees and that the plaintiffs failed to satisfy the first condition although it had faithfully paid the continuing fee. *System Fuels*, 65 Fed. Cl. at 173. The court concluded, however, that the government's delay in its performance under the Standard Contract had resulted in a temporary frustration of purpose which temporarily excused the plaintiffs' fulfillment of the obligation to pay the one-time fee. *Id*. at 174. The court reserved judgment on the government's recoupment and offset claims. *Id*. at 174 n.12.

The parties subsequently proceeded with discovery according to a schedule that would permit trial to commence on February 12, 2007. *See* Scheduling Order of June 28, 2005. Plaintiffs filed their First Amended Complaint on May 13, 2005. Thereafter, at a hearing held on March 14, 2006, the court addressed a motion by the government for partial reconsideration of a tentative ruling by the court that damages to be addressed at trial would be limited to those incurred through the close of System Fuels's most recent fiscal year prior to the start of trial. *See System Fuels*, 65 Fed. Cl. at 177. The government's motion was premised on the appellate decision in *Indiana Michigan* and its application of *Restatement (Second) of Judgments* § 26 (1982) as a basis for establishing at trial the amount of damages that had actually been sustained. Hr'g Tr. 4:16 to 5:14 (Mar. 14, 2006). The court concluded that the trial should proceed on the basis of a "cut-off date . . . that [would enable] both sides [to] have a full and fair opportunity to address damages," and a cutoff date of December 31, 2006, the end of System Fuels' fiscal year, would not satisfy that overriding criterion. Hr'g Tr. 8:18-20, 9:4-11; 27:19-25 (Mar. 14, 2006). After considering the practical aspects of discovery and trial preparations, a partial consensus was reached that a cut-off date of June 30, 2006 would enable both sides to be prepared for trial, so long as the parties cooperated fully during discovery. *See* Hr'g Tr. 31:2 to 35:15 (Mar. 14, 2006).

As a result, on July 28, 2006, the plaintiffs filed a Motion for Leave to File Second Amended Complaint and Supplemental Complaint ("Pls.' Mot. for Leave"), requesting damages incurred through June 30, 2006. On August 14, the government filed its Response to Motion for Leave to File Second Amended Complaint and Supplemental Complaint ("Def.'s Resp."), acquiescing in the filing of the proffered Second Amended Complaint but seeking extended time for discovery.

---

[3]This court also determined that the government was collaterally estopped from arguing that it was not in partial breach on and after January 31, 1998, *System Fuels*, 65 Fed. Cl. at 176 (citing *Northern States Power Co. v. United States Dept. of Energy*, 128 F.3d 754 (D.C. Cir. 1997)), and, accordingly, rejected the government's contention that the earliest possible date of breach was 2001. *System Fuels*, 65 Fed. Cl. at 176.

Thereafter, a discovery dispute arose that was largely unrelated to a cutoff for the damages claimed. The government sought to take a deposition of plaintiffs' designee under Rule 30(b)(6) of the Rules of the Court of Federal Claims ("RCFC") concerning plaintiffs' ability to pay the one-time fee and their earnings of income on the deferred amount beyond the interest due the government on the one-time fee, but plaintiffs resisted on relevancy grounds. On August 24, 2006, the plaintiffs filed a Motion for Protective Order Regarding Defendant's Notice of Deposition and for Expedited Consideration ("Pls.' Mot. for Protective Order"). On August 30, the government filed a Cross Motion and Response to Protective Order ("Def.'s Cross-Mot."). Plaintiffs filed a reply and response ("Pls.' Reply") on September 8, 2006, and defendants filed a reply (Def.'s Reply) on September 26, 2006. The government contends that the proposed deposition bears on its request for a setoff related to plaintiffs' obligation to pay the one-time fee, and plaintiffs oppose such a deposition on the ground that the government's proffered rationale for the deposition is not relevant to the quantum of damages. In its cross-motion, the government also seeks leave to increase the number of depositions allowable beyond the number (ten) presumptively available under RCFC 30(a)(2)(A).

## DISCUSSION

### A. A Second Amended and Supplemental Complaint

In their proffered Second Amended and Supplemental Complaint, plaintiffs seek to "specify the damages [incurred] through June 2006," alleging that additional damages in the form of costs of mitigation have been sustained since plaintiffs filed their First Amended Complaint on May 13, 2005. Pls.' Mot. for Leave at 10. The government "do[es] not oppose plaintiffs' motion to supplement [their] complaint, provided that any order granting such leave also grant the parties' requested enlargement of the presently-scheduled discovery deadline through and until December 11, 2006, and require the plaintiff[s] to immediately produce all 2006 cost data and supporting documentation." Def.'s Resp. at 6.

1. *Amendment under RCFC 15(a).*

The government avers that amendment of plaintiffs' complaint is inappropriate in this instance because "an amended pleading . . . only should relate to matters that have taken place prior to the date of the earlier pleading." Def.'s Resp. at 3 (citing 6 C. Wright, A. Miller, & R. Marcus, *Federal Practice & Procedure* § 1473 at 521 (2d ed. 1990)). However, Wright and Miller recognize that "a party may make an amendment to amplify a previously alleged claim," 6 C. Wright, A. Miller, & R. Marcus, *Federal Practice & Procedure* § 1474 at 533, and "to state additional claims." *Id*. § 1474 at 536-38. In their proffered Second Amended and Supplemental Complaint, plaintiffs have included allegations that explicate more fully their previously alleged claim. They aver that the "best-achievable" date announced by the Department of Energy to begin receipt of spent nuclear fuel is March 31, 2017, and that their mitigating actions had to take account of this deferral. *See* Pls.' Proffered Second Am. and Supp. Compl. ¶¶ 19, 37-38.

5

The Rules instruct that "leave [to amend] shall be freely given when justice so requires." RCFC 15(a). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs' requested amendment of the complaint is proper under this standard although the amendments are not the primary thrust of their motion for leave; supplementation to allege damages through June 30, 2006 is the focus of their motion.

2. *Supplementation under RCFC 15(d)*.

RCFC 15(d) empowers this court "[u]pon motion of a party . . . , upon reasonable notice and upon such terms as are just, [to] permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." RCFC 15(d) conforms to Fed. R. Civ. P. 15(d). *See* RCFC 15 Rules Committee's Note (2002). Fed. R. Civ. P. 15(d) is "intended to give the court broad discretion in allowing a supplemental pleading." Fed. R. Civ. P. 15 advisory committee note (1963). The subdivision was adopted to enable a plaintiff to avoid "be[ing] needlessly remitted to . . . commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." *Id*. "[T]he court is to determine in the light of the particular circumstances whether filing [of supplemental pleadings] should be permitted, and if so, upon what terms." *Id*.

Although "a liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)," a case-specific reason might cause a court to deny leave to amend. *See* 3 James Wm. Moore, *Moore's Fed. Practice* §§ 15.14[1] & 15.14[2] at 15-26, 15-30.1 to 15-34.1 (3d ed. 2006). "[T]he same principles that support the liberal amendment of pleadings also apply to supplemental pleadings." *Id*. § 15.30 at 15-109. "It is within the court's discretion to grant or deny leave to file a supplemental pleading." *Id*.

Supplementation has been allowed in other spent nuclear fuel cases. For example, this court allowed the trial on damages in *Tennessee Valley Authority*, which trial took place in June and July of 2005, to cover damages incurred through September 30, 2004, even though the original action was filed in 2001. *See Tennessee Valley Auth.*, 69 Fed. Cl. at 523-24. There, the parties were able to calibrate their supplemental filings and proofs of damages put forward at trial to reflect events through a specified date that was roughly three years after the commencement of the action. *Id*. at 523. And in *Sacramento Municipal Utility District v. United States*, 70 Fed. Cl. 332 (2006), a case originally instituted in 1998, the court concluded that damages should be awarded for "costs incurred from May 15, 1997 to December 31, 2003."

Supplementation should be allowed where post-commencement events are material to the action, consideration of those events could be accommodated within the orderly progression of

the case to trial or other disposition, and supplementation would not prejudice any party. Supplementation may be limited or curtailed to avoid prejudice. *See Pacific Gas and Elec. Co. v. United States*, 70 Fed. Cl. 758, 764-65 (2006) ("concluding that allowing plaintiff to seek damages through the end of 2005 would be prejudicial to the defendant," but granting leave to claim post-commencement-of-suit damages incurred through December 31, 2004).

Here, the government concedes that some supplementation of plaintiffs' complaint is appropriate. *See* Def.'s Resp. at 4. The question is whether the supplementation should be constrained or conditioned. The plaintiffs, in their Proffered Second Amended and Supplemental Complaint, allege the damages incurred through June 30, 2006. Plaintiffs' alleged damages incurred after the filing of the original complaint on November 5, 2003, and the First Amended Complaint on May 13, 2005, to and through June 30, 2006, are intrinsically linked to their damages incurred prior to the filing of the original complaint. Most importantly, granting supplementation would neither deny the government reasonable notice nor be on unjust terms. At least four months prior to the plaintiff's formal filing of their motion for leave, the government was made aware of the likelihood that the plaintiffs would seek damages incurred through June 30, 2006. *See* Hr'g Tr. 31:19 to 32:11 (Mar. 14, 2006). The trial on damages is not scheduled until February 12, 2007. *See* Amended Scheduling Order, May 15, 2006. In its response, the government does not contend that granting the plaintiffs' motion would inherently prejudice the government. Rather, to ensure that the steps in preparation for trial are adequate, the government seeks to condition a grant of supplementation on plaintiffs' prompt production of all 2006 cost data and supporting documentation and on an extension to December 11, 2006 of the presently scheduled deadline of November 3, 2006 for completion of fact discovery and expert discovery. Def.'s Resp. at 6. Plaintiffs do not contest these conditions. At the hearing on the motions, they represented that they had already begun to produce the requested cost information and that they would complete production promptly. *See* Hr'g Tr. 5:24 to 6:15, 7:11-25 (Sept. 13, 2006). Moreover, plaintiffs have supported a pending Joint Motion to Amend Scheduling Order that proposes to extend the deadline for discovery.

In the circumstances, the court is satisfied that sufficient time exists for the parties adequately to prepare their cases on damages through June 30, 2006, for presentation at trial in February 2007.

      3. *Effect of Restatement (Second) of Judgments § 26.*

Notwithstanding their limited disagreement over the practical aspects of supplementation of the complaint, the parties have put forward divergent views on the legal basis of such supplementation and the consequent effect on the claims in this case. In particular, the parties invoke the Federal Circuit's discussion in *Indiana Michigan* of *Restatement (Second) of Judgments* § 26(1)(e) to offer competing interpretations of the Federal Circuit's action in that

case.[4]  As the government would have it, in *Indiana Michigan*, the Federal Circuit treated Section 26(1)(e) of the *Restatement* as operating to "prohibit the recovery of the post-complaint damages that plaintiffs claim they are entitled to prove and recover at trial." Def.'s Resp. at 4. The plaintiffs aver that they have submitted the motion to amend and supplement their complaint to avoid any question in this regard. Hr'g Tr. 9:25 to 10:6 (Sep. 13, 2006).

"[T]he *Restatement (Second) of Judgments* deals with the preclusive effects of judgments in civil actions. 'Preclusive effects' refers to limitations on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action." *Restatement (Second) of Judgments* at 1 (statement of scope). The government does not argue that the plaintiffs litigated or could have litigated recovery for damages incurred between May 13, 2005, the date of the First Amended Complaint, and June 30, 2006, in some prior action. Most notably, Section 26(1)(e) is an exception to the otherwise applicable precepts related to the preclusive effects of judgments through the doctrine of merger and bar. Nonetheless, the government impliedly seems to suggest that the exception in Section 26 of the *Restatement* to the otherwise applicable law of claim preclusion has the effect of limiting the scope of a currently pending action. Such is not the law of claim preclusion. To the contrary, to the extent plaintiffs are permitted by the court to pursue damages now, those claims would merge into the judgment, and the plaintiffs would be barred from seeking the same damages in a later action.

In these respects, the government's contention misreads *Indiana Michigan*. While the Federal Circuit cited the *Restatement (Second) of Judgments* in its discussion of future damages in *Indiana Michigan*, the *Restatement* is not the reason the Federal Circuit gave for affirming the trial court's decision not to allow recovery of damages for anticipated future nonperformance. Rather, it was "[b]ecause of [the] *highly speculative nature*" of damages for anticipated future nonperformance that "a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach." *Indiana Mich.*, 422 F.3d at 1376 (emphasis added) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997)).

The anticipated future damages sought in *Indiana Michigan* comprised costs projected to be incurred after trial. *See Indiana Mich. Power Co. v. United States*, 60 Fed. Cl. 639, 664 (2004) ("Plaintiff emphasized . . . possible costs in 2005 or 2006, extending forty years or more

---

[4]Section 26(1) of the *Restatement (Second) of Judgments* provides that
> the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant [when] . . . (e) [f]or reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course.

8

into the future."), *aff'd*, 422 F.3d 1369 (Fed. Cir. 2005).  The trial court actually considered the costs incurred "between the date of the breach . . . and the March 2004 trial" but declined to award damages on causation grounds.  *Indiana Mich.*, 60 Fed. Cl. at 641 (finding that the plaintiff "did not show that these costs were related to the breach").  Accordingly, a trial court's discretion in permitting consideration of damages incurred after the original complaint but before the trial was not at issue before the Federal Circuit in *Indiana Michigan*.[5]

The Federal Circuit recognized as a general matter that a claimant "can, however obtain recovery for post-breach damages as they are incurred." *Indiana Mich.*, 422 F.3d at 1377.  It was with an eye toward an all-but-inevitable second round of future lawsuits that the Federal Circuit considered both the applicability of the statute of limitations and the *Restatement (Second) of Judgments*.  *See Indiana Mich.*, 422 F.3d at 1377-78.  The Federal Circuit was removing all doubt as to the claimant's ability to bring suits in the future and how the statute of limitations would be applicable to those suits.[6]  A judgment in the case then before the court would not preclude recovery of future damages once those damages were actually incurred and were no longer speculative.  The *general* rule of claim preclusion is that "a final judgment on a claim extinguishes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id*. at 1377-78 (quoting *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1319 (Fed. Cir. 1983) (citing *Restatement (Second) of Judgments* § 24 (1982))); *accord Tennessee Valley Auth. v. United States*, 60 Fed. Cl. 665, 677-78 (2004).  To demonstrate that future suits by the claimant would not be precluded, the Federal Circuit relied on an applicable exception to the general rule, concluding that "Indiana Michigan's grievance f[ell] within [*Restatement (Second) of Judgments* § 26(1)](e)'s exception for injury experienced during the execution phase of a continuing contract; because it sued for partial breach, ongoing obligations exist[ed] for both parties."  *Indiana Mich.*, 422 F.3d at 1378.  That the court found that the exception in Section 26(1)(e) was applicable to prevent future claim preclusion does not mean that the other related exceptions set out in the *Restatement* are inappropriate.  In this respect, the Federal Circuit commented that:  "[W]e agree with the exceptions to the rules of merger and bar set out in *Restatement (Second) of Judgments*, Sections 26(1)(b) and (e)."  *Indiana Mich.*, 422 F.3d at 1378; *see also Tennessee Valley Auth.*, 60 Fed. Cl. at 678.  Thus, the Federal Circuit explicitly announced its agreement with the exception found in Section 26(1)(b) as well as that in Section 26(1)(e).  Both exceptions apply in this instance.

---

[5]Furthermore, as the government notes, the decision of the Federal Circuit in *Indiana Michigan Power* did not address supplemental pleadings allowed pursuant to RCFC 15.  Def.'s Resp. at 4.

[6]The statute of limitations would start to run once "'all the events [had] occurred that fix the defendant's alleged liability and entitle the plaintiff to institute an action.'"  *Indiana Mich.*, 422 F.3d at 1378 (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)).

9

First, the general rule of claim preclusion, *i.e.*, against claim splitting, does not apply when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." *Restatement (Second) Judgments* § 26(1)(b). This court has done so. *See System Fuels*, 65 Fed. Cl. at 177.

Second, the general rule of claim preclusion does not apply when "[f]or reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course." *Restatement (Second) of Judgments* § 26(1)(e). The plaintiffs are suing only for partial breach, not for total harm, both past and prospective, to avoid the problem of speculative future damages. The government's myopic focus on the phrase "initiation of suit," paraphrasing "date of suit" found in § 26(1)(e) and "announcement of the first action" found in comment *g* to Section 26, Def.'s Resp. at 4, does not do justice to the scope of the *Restatement*.

    4.    *Synopsis*.

Plaintiffs' Motion for Leave to File Second Amended and Supplemental Complaint is granted. In this connection, plaintiffs shall expeditiously complete the disclosure of their "computation of any category of damages claimed . . . , making available for inspection and copying as under RCFC 34 the documents or other evidentiary material . . . on which such computation is based." RCFC 26(a)(1)(C). Plaintiffs shall also fulfill their obligations "to supplement at appropriate intervals [their] disclosures . . . [upon] learn[ing] that in some material respect the information [previously] disclosed is incomplete." RCFC 26(e)(1).

Consequently, plaintiffs' claims for redress of the government's partial ongoing breach shall be limited to those damages incurred through June 30, 2006. Plaintiffs shall retain the right to bring subsequent actions for damages sustained after June 30, 2006.

### B. Additional depositions sought by the government

On August 9, 2006, the government provided plaintiffs with a notice of examination by deposition pursuant to RCFC 30(b)(6). In the notice, the government advised that it sought to depose plaintiffs' designee(s) respecting the following topics:

1. Plaintiffs' ability, beginning in 1998 and through the present, to pay the one-time fee required pursuant to paragraph VIII.A & B of the Standard Contract, including, but not limited to, the source from which such fee could or would have been paid;
2. Identification of the funds that, had plaintiffs paid the one-time fee in 1998 or in 2000, plaintiffs would have used to pay those funds, as well as identification of the specific monetary accounts in which those funds were deposited at that time.

10

    3.       With regard to the funds identified in response to paragraph 2 above, provide a specific and detailed accounting of all uses that plaintiffs have made of those funds, as well as any profits that plaintiffs have made, losses that they have incurred, loans or capital that plaintiffs did not need to obtain because of the plaintiffs' ability to use those funds, or interest that plaintiffs have earned on those funds, from 1998 to the present.

    4.       To the extent that plaintiffs cannot identify any specific funds that they would have used to pay the one-time fee, the manner in which plaintiffs would have funded and paid the one-time fee had they been required to pay it in 1998, 1999, or 2000.

    5.       Assuming DOE were to perform in 2007, describe how plaintiffs would pay their one-time fee obligations under the Standard Contract, including the source of such payment and whether plaintiffs would borrow money or raise capital to satisfy their contract obligations.

    6.       Identification of any fund, trust or account, from 1983 to present, containing the monies with which plaintiffs intend to pay [their] one-time fee obligations under the Standard Contract.

Pls.' Mot. for Protective Order Ex. A. Plaintiffs seek a protective order barring the government from taking depositions related to these topics, claiming that "inquiries regarding how [p]laintiffs intend to pay the one-time fee, or how they may have used money that would otherwise pay the one-time fee, are irrelevant to the adjudication of [the] damages claim." Pls.' Mot. for Protective Order at 2. Additionally, plaintiffs request that the government be directed to pay the plaintiffs' costs associated with preparing the motion for a protective order. *Id*. at 8. The government's response asserts that the subject matter at issue in the notice of deposition is "directly relevant to the determination of damages in this case," Def.'s Cross-Mot. at 3, and it cross-moves for an order compelling the noticed deposition. *Id*. at 13. In its cross-motion, the government also seeks leave to conduct additional depositions beyond the presumptive number (ten) that is allowed under the RCFC 30(a)(2)(A), primarily to examine persons identified by plaintiffs as having knowledge of plaintiffs' claim. *Id*. The analysis of these cross-motions will first focus on the issues associated with the notice of deposition of plaintiffs' designee under Rule 30(b)(6) and then turn to the broader questions raised by the government's request for up to 20 depositions in this case.

    1.  *The proposed deposition of plaintiffs' designee(s).*

In general, "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." RCFC 26(b)(1). This standard mirrors that of Fed. R. Civ. P. 26, as amended in 2000. *See Marriott Int'l Resorts, L.P. v. United States*, 61 Fed. Cl. 411, 416 n.8 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006). The 2000 amendments to Fed. R. Civ. P. 26 narrowed the scope of discoverable material, limiting discovery as of right to matters relevant to the claim or defense of any party. *Id*. "Prior to the

2000 amendments, the parties were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action.'" 6 James Wm. Moore, *Moore's Fed. Practice* § 26.41[2][a] at 26-109 (3d ed. 2003) (quoting Fed. R. Civ. P. 26(b)(1) (1983)).  Under the current standard, a court should "focus on the specific claim or defense alleged in the pleadings." *Id*. (citing Fed. R. Civ. P. 26(b)(1) advisory committee note (2000 amend.)).  However, a particular fact need not "be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." *Id*. at 26-110.  The fact must, however, be germane to a specific claim or defense asserted in the pleadings for information concerning [the fact] to be a proper subject of discovery." *Id.*

The plaintiffs claim to have incurred damages in mitigating the government's breach by constructing and operating dry storage facilities for spent nuclear fuel.  Pls.' First Am. Compl. ¶ 21; Pls.' Proffered Second Am. Compl. ¶ 21.  The government's general denial in its answer, Def.'s Answer to Pls.' First Am. Compl. ("Def.'s Answer"), ¶ 35, is accompanied by the averment that it "is entitled to setoff or recoup the one-time fee . . . against any judgment awarded in plaintiffs' favor." Def.'s Answer. ¶ 44.

      a. *An economic-benefit setoff defense.*

As to relevancy, the government supports the deposition it seeks to take by arguing that the plaintiffs may have used the funds retained as a result of the deferral of the one-time fee payable to the government to earn profits that exceed the interest rate at which the one-time fee compounds under the Standard Contract.  As the government would have it, any such earnings over the interest payable on the deferred amount under the Standard Contact either (1) should be considered as a reduction in the amount of damages the plaintiffs otherwise incurred or (2) should be considered as part of the setoff the government contends it is entitled to make against a potential judgment awarded in the plaintiffs' favor. *See* Def.'s Cross-Mot. at 5-6; Def.'s Answer ¶ 44.

What plaintiffs style as a relevancy objection to the noticed deposition of a corporate designee in practical effect serves the function of a motion to strike a defense under RCFC 12(f). *See, e.g.,* Pls.' Mot. for Protective Order at 5 ("To the extent that the [g]overnment plans to argue that [p]laintiffs' damages . . . should be reduced based on any economic benefit that [p]laintiffs may have incurred from their deferral of the one-time fee payment, such a defense is contrary to the most basic principles of contract law, is unsupported by any cognizable legal theory, and would disturb the bargain that the parties reached in 1983.").  Because of this pragmatic parallelism, plaintiffs' objection will be tested against standards for striking a defense.  In that regard, "[i]f sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted." 2 James Wm. Moore, *Moore's Fed. Practice* § 12.37[4] at 12-100.5 (3d ed. 2006).  The court has its doubts about the viability of the government's economic-benefit defense, particularly because the Standard Contract establishes a specific interest rate payable for deferral of the one-time fee without reference to any other compensatory

mechanism respecting the deferral.[7]  However, at this juncture, prior to trial of the merits, the court has an insufficient context to evaluate the government's proposed defense, and accordingly that defense will not now be ruled invalid as a matter of law.  The government may take the proposed deposition involving this subject.[8]

        b.  *An inability-to-pay defense.*

The government also argues that to the extent plaintiffs would have been unable to pay the one-time fee prior to the time the government should have performed, the plaintiffs' own financial situation, not the government's breach, caused the damages the plaintiffs claim to have incurred.  *See* Def.'s Cross-Mot. at 7-9.  Thus, under the government's theory, the plaintiffs' historic ability *vel non* to pay the one-time fee is germane to the question of causation.  The plaintiffs counter that this court already has ruled on the issue of plaintiffs' willingness and capacity to pay the one-time fee.  Pls.' Mot. for Protective Order at 6.  In that respect, the court did indeed previously refer to "System Fuels's stated willingness to pay the one-time fee once the date for delivery of its [spent nuclear fuel] was assured," *System Fuels*, 65 Fed. Cl. at 174, commenting that "this representation [wa]s credible, considering that System Fuels has paid over $220 million in continuing fees and has made regular payment of those fees even after filing this suit."  *Id*.  However, those remarks were not a finding of fact based on an evidentiary record.

---

[7]In its reply brief, the government describes the interest rate provision of the Standard Contract, art. VIII.V.2.(b), as "establishing an interest rate that would apply until the fee was paid in the 'but for' world."  Def.'s Reply at 6.  The government argues that the interest rate provision "is not a 'remedy' provision at all" and, even if it were, "it could not constitute an *exclusive* remedy."  *Id*. at 6-7.  From these premises, the government argues the interest rate provision does not "limit[] the [g]overnment's rights . . . [in the event] the [g]overnment partially breached the Standard Contract."  *Id*. at 6.

[8]The court is influenced by fact that it previously remitted to trial any further consideration of the government's claim for a recoupment or setoff related to the deferred one-time fee.  *See System Fuels*, 65 Fed. Cl. at 174 n.12.  A "setoff" in this case seems unlikely given that a setoff ordinarily "arises out of a transaction extrinsic to the plaintiff's claim," *see In re Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996), and, to the court's knowledge, such an extrinsically-based setoff has not been claimed by the government.  Recoupment is different because it does arise out of the same transaction that engenders a plaintiff's claim, *id*., but it is not readily apparent that plaintiffs in this case have received or kept anything of value that they are currently contractually obliged to pay over to the government.  Even so, the court is well aware that there is a potential for disagreement on recoupment, because a judge of this court has ruled on summary judgment that the government is entitled to recoup a deferred one-time fee against any award that might be made to a utility claiming damages for breach by the government of a Standard Contract.  *See Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 373 (2005).

The plaintiffs cast this court's commentary about plaintiffs' ability to pay the one-time fee as "judicial notice" taken pursuant to Fed. R. Evid. 201. Pls.' Reply at 3 & n.1. However, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court made no such determination. Instead, the commentary arose when, in considering a motion by the government for partial summary judgment, the court considered all issues in the light most favorable to the plaintiffs, the non-moving party. *System Fuels*, 65 Fed. Cl. at 169, 174. In seeking partial summary judgment in its favor, the government did not dispute the plaintiffs' ability and willingness to pay the one-time fee, but that prior omission does not now bar the government from endeavoring to dispute the issue at trial. Accordingly, the government may take depositions concerning the plaintiffs' historic ability to pay the one-time fee.

That a deposition on this subject may be had does not mean that the scope of the inquiry reaches from the inception of the contract to the present. The government, in its notice of examination, seeks a description of "how plaintiffs would pay their one-time fee obligations . . . , including the source of such payment and whether plaintiffs would borrow money or raise capital to satisfy their contract obligations," assuming the government "were to perform in 2007." Pls.' Mot. for Protective Order Ex. A. As discussed *supra*, plaintiffs' action encompasses damages incurred through June 30, 2006. To address damages incurred in 2007 would be to allow precisely what the Federal Circuit has ruled this court cannot award, namely, future damages. *Indiana Mich.*, 422 F.3d at 1376.[9] Under the government's theory, only the plaintiffs' historic ability to pay the one-time fee is germane to the question of causation of historic damages. Plaintiffs' hypothetical future method of payment and hypothetical future sources of funds are not relevant, and inquiries as to the plaintiffs' ability to pay the one-time fee after June 30, 2006, are not properly within the scope of discovery.

            c. *Identification of persons with knowledge.*

In its cross-motion, the government requests that this court "compel plaintiffs to identify an individual, or individuals, who have actual knowledge of the subjects identified in the RCFC 30(b)(6) deposition notice." Def.'s Cross-Mot. at 1. This request is premature. It assumes that plaintiffs will not comply with RCFC 30(b)(6). Upon receiving a deposition notice that describes "with reasonable particularity the matters on which examination is requested[, an] organization . . . shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify." RCFC 30(b)(6); *see Alexander v. Federal Bur. of Investigation*, 186 F.R.D. 137, 141 (D.D.C. 1998) ("[T]he designating party is under the duty to designate more than one deponent if it would be necessary to do so in order to respond to the

---

[9]In this respect, the government represents that its "RCFC 30(b)(6) deposition notice relates to the ability of [System Fuels] to pay the one-time fee in the 'but for' world and at the time of the breach, not to [System Fuels'] ability to pay the fee in the future." Def.'s Reply at 11.

relevant areas of inquiry that are specified with reasonable particularity."). The plaintiffs have received such a notice, are well aware of their obligations under Rule 30(b)(6), and have fulfilled those obligations respecting other such notices. "Normally the process [associated with depositions under Rule 30(b)(6)] operates extrajudicially." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C. 1999). Good cause is shown for the court to intervene only when there has been a sufficient demonstration that the procedures specified in the Rule will not be followed. *See*, *e.g.*, *id*. at 81 (concluding that Iran's claimed lack of control over an agent supplied good cause for the court to act). No such showing has been made in this instance.

If "a corporation is truly unable to designate a representative under Rule 30(b)(6), it must seek a protective order." 7 James Wm. Moore, *Moore's Fed. Practice* § 30.25[3] at 30-56.4 (3d ed. 2006). The protective order plaintiffs sought was not grounded on the premise that no one within their organizations could respond appropriately. That plaintiffs might designate several persons to comply is fully within the terms of the Rule. In short, the government has not shown good cause for an order compelling plaintiffs to comply with Rule 30(b)(6) regarding designation of persons with knowledge of the pertinent subject matter.

   2. *Exceeding the presumptively appropriate maximum number of depositions.*

The government seeks leave of this court to exceed the ten depositions permitted to be taken without leave of the court or without the written stipulation of the parties, as provided in RCFC 30(a)(2). Def.'s Cross-Mot. at 13. To date, the government reportedly has taken at least eleven depositions, Def.'s Cross-Mot. at 10, and it apparently has scheduled at least six further depositions. *See* Pls.' Mot. for Protective Order at 4. The government requests that it be allowed to take up to twenty depositions. Def.'s Cross-Mot. at 13.

The court will grant the leave sought "to the extent consistent with the principles stated in RCFC 26(b)(2)." RCFC 30(a)(2). The requisite considerations include determinations of whether

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

RCFC 26(b)(2).

The government attributes its need to take additional depositions to the plaintiffs' "continued refusal to narrow the list of potential witnesses in this case." Def.'s Cross-Mot. at 10. Under RCFC 26(a)(1)(A), plaintiffs initially identified 52 persons who were "likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment." *See* Hr'g Tr. 47:9-25 (Sept. 13, 2006). As discovery has progressed, the parties have gradually begun to focus on a less numerous group of potentially significant witnesses. Hr'g Tr. 48:15 to 49:23 (Sept. 13, 2006).

In requesting additional depositions, the government does not directly address the criteria on which this court must base its decision, leaving this court to glean scattered kernels of pertinent information from the government's general argument. The government informs this court that "it has been [the government's] experience in this case that the individuals whom [the government] ha[s] deposed to date have extremely narrow knowledge on issues relevant to this case and regularly identify other individuals who allegedly can answer the [g]overnment's questions." Def.'s Cross-Mot. at 11. However, the government does not specify what information it seeks, nor does it assert that the information sought would not be obtainable from some other source that is more convenient, less burdensome, or less expensive. Without knowing what is sought, this court cannot make a determination as to whether the government has had ample opportunity to obtain the information. This court also cannot evaluate how burdensome or expensive the unspecified proposed additional depositions would be nor what likely benefits the government expects to realize.

Moreover, litigants are not entitled to depose every potential witness the opposing party may call. *See Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996) (denying leave to take additional depositions, recognizing that informal interviews conducted within applicable ethical constraints could enable adequate preparation for trial). Finally, it appears that there will be a significant overlap in the witnesses who are called to testify in this case and in another case also before the court in which trial commenced September 18, 2006. Hr'g Tr. 27:4-18 (Sept. 13, 2006). In short, the government has not demonstrated why ten additional depositions are necessary to allow the government adequate opportunity to prepare for trial. *See Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) ("[Plaintiff] presented no good reason why the additional depositions were necessary."); *see also Brandt v. Wand Partners*, 242 F.3d 6, 18 (1st Cir. 2001) (order limiting additional depositions was not an abuse of discretion).

The parties have informally agreed that the government may have a total of sixteen depositions. Hr'g Tr. 25:24-25 (Sept. 13, 2006). Furthermore, at the hearing on these motions, the government conceded that "around seventeen [depositions] would probably get the job done." Hr'g Tr. 49:9 (Sept. 13, 2006); *see also* Hr'g Tr. 48:7-8 (government counsel's comment that "17 [depositions] is about the upper limit"). Accordingly, this court grants the government leave to take up to a total of seventeen depositions. If the government finds itself unable adequately to prepare for trial with the discovery avenues thus available to it and the government can demonstrate a particular need for more depositions, it may again seek leave of this court.

## CONCLUSION

Plaintiffs' motion for leave to file its Second Amended and Supplemental Complaint is GRANTED, and the Clerk is directed to file the Second Amended and Supplemental Complaint.

For the reasons stated, plaintiffs' Motion for Protective Order Regarding Defendant's Notice of Deposition and for Expedited Consideration is GRANTED IN PART and DENIED IN PART, and the government's Cross-Motion is GRANTED IN PART and DENIED IN PART. The government may take a total of seventeen depositions, including the deposition of plaintiffs' designee(s) as to which notice was given on August 9, 2006. In these depositions, the government may address subjects that include its tentative economic-benefit and inability-to-pay defenses associated with the one-time fee. The scope of the depositions is limited in time to the period of plaintiffs' claims for damages, *i.e.*, January 31, 1998 through June 30, 2006. No costs are awarded.

IT IS SO ORDERED.

s/ Charles F. Lettow
Judge